**UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
HARTFORD DIVISION**

| | |
|---|---|
| In re:<br><br>Traditions Oil Group, LLC,<br><br>    Debtor. | Chapter 11<br><br>Case No. 26-20268 (JJT)<br><br>Re: ECF No. 16, 27 |

**MEMORANDUM OF DECISION ON COURT'S ORDER TO SHOW
CAUSE AND DENYING MOTION FOR RELIEF FROM DISMISSAL ORDER**

Before the Court are its Order to Show Cause (ECF No. 16) and the Debtor's

Motion for Relief from Order (ECF No. 27). The Court previously dismissed this

Chapter 11 case on the United States Trustee's motion (ECF Nos. 8, 16). For the

following reasons, the Court declines to reinstate this bankruptcy case and further

sanctions the Debtor and its counsel.

Despite its name, the Debtor currently has no connection to any oil business.

Instead, it has interests in two residential properties, one each in South Windsor

and Rocky Hill, Connecticut, which are the subject of foreclosure actions.[1] Both of

these foreclosure actions have been pending since 2018. A judgment of strict

foreclosure had entered against the South Windsor property. After a tortured

history the Court need not discuss here, the Debtor filed this bankruptcy case on

the law day, March 23, 2026.[2] Four days after the petition was filed, the U.S.

---

[1] *See Lending Home Funding Corp. v. REI Holdings, LLC*, No. HHD-CV-18-6092486-S (Conn. Super. Ct.) (South Windsor property); *CAF Bridge Lending, LLC v. REI Holdings LLC*, No. HHD-CV-18-6096440-S (Conn. Super. Ct.) (Rocky Hill property).

[2] The bankruptcy petition (and still is) missing several of the document required to accompany every corporate filing.

Trustee filed a Motion to Dismiss for, among other reasons, failure to provide proof of adequate insurance and failure to timely respond to the U.S. Trustee's request for documents and information. The Court held a hearing on the Motion to Dismiss on March 31, 2026, at which neither the Debtor's representative nor its counsel appeared.

On April 1, 2026, the Court granted the U.S. Trustee's Motion to Dismiss and issued the instant Order to Show Cause, which ordered "the Debtor and its counsel to APPEAR AND SHOW CAUSE as to whether the dismissal shall be with prejudice, including a two-year bar to re-filing a bankruptcy petition based on a finding of bad faith, and whether sanctions, including the disgorgement of any fee for services, shall issue against the Debtor and/or its counsel in connection herewith and for the failure to appear at the hearing held on March 31, 2026, before this Court." The show cause hearing was set for April 23, 2026. Neither the Debtor nor its counsel appeared at the April 23, 2026 hearing. The Court thus continued the hearing.

On May 21, 2026, the Court held the continued hearing, at which the Debtor's counsel, John A. Sodipo, appeared. That same day, he filed a response to the Order to Show Cause and also asked the Court to set aside the dismissal. At the hearing, he blamed staffing and medical issues for his nonresponsiveness. Given the filing of the Motion for Relief, the Court continued the hearing on the Order to Show Cause.

On June 16, 2026, the Court held a final hearing on the Order to Show Cause and the Motion for Relief. The Debtor's counsel reiterated his staffing woes, along with the medical issues experienced by the Debtor's representative, for the delays. He insisted that, if given the chance, he would set the course of the case right and would work to accomplish the tasks necessary to move the case forward. He admitted, however, that he had seen no insurance binder for either property, that the Debtor had no cash, and that the properties were both underwater[3] and not generating any revenue. The Court took the matter under advisement at the conclusion of the hearing.

"The principal purpose of the Bankruptcy Code is to grant a fresh start to the honest but unfortunate debtor." *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 367 (2007).

> Chapter 11 of the Bankruptcy Code enables a debtor company to reorganize its business under a court-approved plan governing the distribution of assets to creditors. This plan, which is primarily the product of negotiations between the debtor and creditors, governs the distribution of valuable assets from the debtor's estate and often keeps the business operating as a going concern. Chapter 11 strikes a balance between a debtor's interest in reorganizing and restructuring its debts and the creditors' interest in maximizing the value of the bankruptcy estate.

*Truck Ins. Exch. v. Kaiser Gypsum Co., Inc.*, 602 U.S. 268, 272, (2024) (cleaned up). Inherent in this is that a bad faith filing, or one in which there is no reasonable prospect for a confirmable plan, cannot survive. *See* 11 U.S.C. § 1112(b). "Although

---

[3] The value of the South Windsor property has been found to be $306,000, with a debt of $348,152.41. The case involving the Rocky Hill property had not yet gone to judgment prior to the filing of this case, but the property was appraised at a value of $321,000, with a stated debt of $347,383.79. The Debtor's counsel acknowledged that both properties are in need of substantial repairs.

3

case law is legion that filing a bankruptcy petition to forestall a foreclosure sale is a permissible use of bankruptcy, the case must be undertaken pursuant to a legitimate effort at reorganization." *In re Turner*, 207 B.R. 373, 376 (B.A.P. 2d Cir. 1997) (cleaned up). In other words, the safe harbor of the automatic stay of § 362, which shields debtors from the enforcement of creditors' remedies is not intended as a shelter for those debtors seeking principally to frustrate, impair, or delay creditors or for those debtors possessing no reasonable prospects of a reorganization.

The Debtor here has no income-generating business, no insurance on the properties, no cash, and, despite the passage of eight years of foreclosure proceedings and mixed real estate markets, has been unable to repair the properties or monetize those assets. At the June 16, 2026 hearing before this Court, the Debtor's counsel acknowledged that there is no insurance binder in place (at least not one that he has seen), no proposed sale in place, and no written and enforceable commitment for funding of the Chapter 11 case or the preservation, repair, and maintenance of the properties.[4] He also acknowledged the Debtor's sustained inability to date to deliver to the U.S. Trustee those documents, financial papers, and proof of insurance that are required disclosures in every Chapter 11 case.[5] Although this Court is a platform for second chances, it does not operate on dreams, hopes, and unproven expectations. Neither will it support a Chapter 11 case filing

---

[4] Nor has the Debtor demonstrated the resources to fund counsel fees or a customary retainer.
[5] It bears noting that this case was filed on March 23, 2026, and that, within days, the U.S. Trustee asked the Debtor for the various required documents. In the almost three months since, no documents have been forthcoming. This is hardly evidence of a transparent fiduciary.

with the manifestly clear indicia of impracticability, noncompliance, and infeasibility.

Moreover, the functionality of the federal judicial system and its ability to deliver fair, impartial, and just results, is premised upon the professional competence of practitioners before the Court. This premise is embedded in the Rules of Professional Conduct[6] and reinforced in the duty of this Court to scrutinize and approve the retention of those professionals who serve Chapter 11 bankruptcy estates.[7] The Chapter 11 process and its various requirements are sufficiently complex and demanding so that those unschooled in its mandates rarely succeed in serving the best interests of the Debtor's estate or the purposes of the Bankruptcy Code. The Debtor's counsel has no meaningful Chapter 11 experience or knowledge, as demonstrated by his dialogue with the Court at the June 16, 2026 hearing. Thus, notwithstanding the urgings and naked assurances of the Debtor's counsel, his inexcusable delays, nonappearances, noncompliance, and absence of sound, realistic judgment would not permit this Court to approve his retention as the Debtor's counsel in this case.

Accordingly, this Court will not set aside the dismissal of this Chapter 11 case. Moreover, the Debtor's lack of good faith and financial feasibility, coupled with the patent abuse evidenced by the lack of a proper bankruptcy purpose, support the imposition of a 180-day bar to refiling under any chapter of the Bankruptcy Code by

---

[6] Conn. R. Prof. Conduct 1.1 ("A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.").
[7] *See* 11 U.S.C. §§ 327, 330.

the Debtor. *See In re Casse*, 219 B.R. 657, 662 (Bankr. E.D.N.Y. 1998); *see also* 11 U.S.C. §§ 105(a) and 349(a).

Additionally, in the face of the Debtor's counsel's unqualified and deficient service, any fees paid or to be paid by the Debtor to its proposed counsel with regards to this bankruptcy case shall be disallowed, with any paid to date to be disgorged within 10 days of the date of this Memorandum of Decision. The Debtor's counsel shall also be precluded from filing any Chapter 11 cases in this district for this Debtor—or any other debtor—for a period of 180 days and shall not file any such cases after that period unless and until he completes (within 120 days) a qualified and comprehensive full-day continuing legal education (CLE) program on representing debtors in Chapter 11 cases. Finally, as an admonishment for this patently deficient filing and nonappearances in court, the Debtor's counsel is directed to pay the sum of $150 to the Krechevsky Fund within 14 days of this Memorandum of Decision.[8] The Debtor's counsel shall confirm compliance with the Court's direction regarding CLE and to make this payment by filing a Certificate of Compliance upon the docket of this case.

A separate order will enter.

IT IS SO ORDERED at Hartford, Connecticut this 30th day of June 2026.

James J. Tancredi
United States Bankruptcy Judge
District of Connecticut

---

[8] A check made payable to "CT Bar Institute Robert L. Krechevsky Pro Bono Fund" shall be mailed to Connecticut Bar Association, Attn.: Philip Ponticelli, Controller, 538 Preston Avenue, 3rd Floor, Meriden, CT 06450.